IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES HATCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 06-007-WDS |
| ) | |
| DOUGLAS A. CRAVENS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Plaintiff, currently an inmate in the Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff's *pro se* complaint is divided into 18 enumerated claims. However, after reviewing the 31-page supporting memorandum that details his allegations, the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

    **COUNT 1:** Against Defendants Val, Grubman, Hood, Greenley, Flatt and Cassius for deliberate indifference to Plaintiff's need for psychological treatment, in violation of his rights under the Eighth Amendment.

    **COUNT 2:** Against Defendants Grathler, Veath and Williams for deliberate indifference to Plaintiff's medical needs for his eye care, in violation of his rights under the Eighth Amendment.

**COUNT 3:**   Against Defendants Pelker and Niepert for failing to protect Plaintiff from assault at the hands of another inmate, in violation of his rights under the Eighth Amendment.

**COUNT 4:**   Against Defendant Robertson for use of excessive force, in violation of his rights under the Eighth Amendment.

**COUNT 5:**   Against Defendants Wilson and Scott for conducting an unfair disciplinary hearing, in violation of his rights under the Fourteenth Amendment.

**COUNT 6:**   Aganst unspecified defendants for substandard conditions of confinement, in violation of his rights under the Eighth Amendment.

**COUNT 7:**   Against unspecified defendants for impeding his access to the courts.

**COUNT 8:**   Against unspecified defendants for retaliation.

**COUNT 9:**   Against Defendants Middendorf, Coverly, Cravens, Walker, Hinsley, McAdory, and Randolph County for thwarting the grievance process, in violation of his rights under the Fourteenth Amendment.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**COUNT 1**

While Plaintiff was housed at Stateville, he was issued a prescription for Prozac® due to his "social anxiety disorder."[1]   Upon his arrival at Menard in April 2003, Defendant Val advised Plaintiff that he was reducing his medication to thrice weekly, rather than daily.  Plaintiff went several days with no medication, and then Val abruptly discontinued the prescription.  Over the next several weeks, Plaintiff suffered several anxiety attacks, and he made several requests that his medication be reinstated.  Val persistently refused to provide him with Prozac, and Plaintiff's complaints to Defendant Grubman went unanswered.

> Prison officials have a duty, in light of the Eighth Amendment's prohibition against cruel and unusual punishment, to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  To determine whether an inmate's Eighth Amendment rights were violated by a deprivation, we examine the alleged violation both objectively and subjectively.  *See id.* at 834, 114 S.Ct. 1970.  "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (quotation omitted). Second, the mental state of the prison official must have been "one of deliberate indifference to inmate health or safety." *Id.* (quotation omitted).

*Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001).  The Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Id.* at 734; *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983).  *See also Gibson v. County of Washoe, Nev.*, 290 F.3d 1175 (9th Cir. 2002); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (a doctor's decisions to remove patient from medication and to restore the medication without Lithium constitutes deliberate indifference to patient's psychiatric condition).

Based on the allegations in the complaint, the Court is unable to dismiss the claims against Val and Grubman at this point in the litigation.

---

[1] Prior to his present incarceration, Plaintiff had been hospitalized in a mental ward for this same condition, for which he was given Paxil®.

Plaintiff also alleges that on June 20, 2003, he separately advised Defendants Hood and Greenly that he needed to see a crisis team member. He made the same requests the next day to Defendants Flatt and Cassius. Each Defendant separately acknowledged Plaintiff's request, but nobody from the crisis team came to see him per those requests. From these allegations, the Court cannot find that any of these defendants were deliberately indifferent to Plaintiff's need for attention to his mental health. Accordingly, Defendants Hood, Greenley, Flatt and Cassius are dismissed with prejudice from Count 1.

## COUNT 2

In 1991, Plaintiff was diagnosed with glaucoma. Surgery was performed a few years later in which a filter was placed into his right eye, but that eye continued to be overly sensitive to bright light. In addition to his regular prescription glasses, Plaintiff was also issued tinted glasses for outdoor use.

In September 2003, Defendant Grathler began harassing Plaintiff about his tinted glasses, telling him that he should wear his clear glasses. Later that month, Defendant Veath confiscated those tinted glasses, despite Plaintiff's protest that they were medically prescribed due to his glaucoma. Without his tinted glasses, Plaintiff developed a cataract in his left eye. He also experienced pain in both eyes from bright light, and he constantly bumped into people and objects. In November 2003 he complained to Defendant Williams, but no action was taken.

> A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim premised upon inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial

> risk of harm to the inmate and disregarded the risk." *Id.*; *Farmer*, 511 U.S. at 834. Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). Still, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

*Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007).

At this point in the litigation, the Court is unable to dismiss this claim against Veath and Williams. However, Plaintiff's only allegation against Grathler involves verbal harassment, which is not actionable under § 1983. Accordingly, Grathler is dismissed with prejudice from Count 2.

## **COUNT 3**

In early June 2003, Plaintiff was assigned to share a cell with inmate Roby. Plaintiff quickly discovered that Roby was "highly confrontational and delusional," when Roby began threatening to assault him for any reason, or for no reason at all. Plaintiff advised Defendants Pelker and Niepert of his fears, asking for one of them to be reassigned. No changes were made in the housing arrangements and, in late June, Roby attacked Plaintiff with a few punches.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Luttrell v. Nickel,* 129 F.3d 933, 935 (7th Cir. 1997). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that

danger. *Id.; Reed v. McBride,* 178 F.3d 849, 852 (7th Cir. 1999).  A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety.  *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).  In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action.  *Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001).

Applying these standards to the allegations in the complaint, the Court is unable to dismiss Count 3 at this point in the litigation.

## COUNT 4

Plaintiff flooded his cell in reaction to the assault from Roby.  Defendant Robertson removed him from his cell, hauled his handcuffed wrists high above his head, then handcuffed him to the highest bar in the shower unit "for what seemed like an eternity," causing him "tremendous pain."

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional

recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Applying these standards to the allegations made against Robertson, the Court is unable to dismiss Count 4 at this point in the litigation.

## COUNT 5

Not surprisingly, Plaintiff received a disciplinary ticket from Niepert for flooding his cell. At the hearing before Defendants Wilson and Scott, Plaintiff admitted flooding his cell in an effort to draw attention to the severity of the problem with Roby. Plaintiff was found guilty and punished with one month reduction to C-grade, one month in segregation, one month loss of commissary privilege, and restitution of $18.75. He argues that this was unfair – he believes he should not have been punished at all, as the circumstances with Roby forced him to take extreme action.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d

1173, 1175 (7th Cir. 1997).  If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.*  In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.*  Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was sent to disciplinary segregation for one month.  Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois.  Therefore, Plaintiff's due process claim is without merit, and Count 5 is dismissed from this action with prejudice.

### **COUNT 6**

In July 2003, Plaintiff was assigned to a new cell with inmate Hogue.  The cell was flooded, the toilet did not work, and the summertime heat made conditions even more unbearable.

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause.  First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   The second requirement is a subjective element – establishing a defendant's culpable state of mind.  *Id.*

In this case, Plaintiff makes no allegations against any specific defendant regarding these

conditions. Therefore, he has failed to state a claim upon which relief may be granted, and Coutn 6 is dismissed from this action with prejudice.

**COUNT 7**

On May 23, 2003, Plaintiff sent a request to the law library for complaint forms, copies of his grievances, and research materials on hearsay. Because he was in segregation, Plaintiff was allowed only five cases at a time, he did not receive typing paper as requested, and the wrong research material was brought to him. Two weeks later he sent another request to the law library for research materials, which he finally received two weeks later. He alleges, therefore, that this lack of legal assistance "severely impeded" his efforts to file a post-conviction motion, a civil lawsuit against Stateville, and a grievance against Val.

"[T]he mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). A prisoner's complaint must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Id.*

In this case, Plaintiff makes no specific allegations against any named Defendant who was responsible for allegedly impeding his access to the courts. Therefore, he has failed to state a claim upon which relief may be granted, and Count 6 is dismissed from this action with prejudice.

**COUNT 8**

Plaintiff makes generalized allegations that he was transferred to different cells, and later to

a different institution, out of retaliation for grievances he filed.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). However, the Seventh Circuit recently clarified that in order to qualify as protected speech, an inmate's complaints or grievances must be "related to matters of public concern" rather than merely a "personal gripe" about a particular incident. *Pearson v. Welborn*, 471 F.3d 732, 740-41 (7th Cir. 2006). *See also McElroy v. Lopac*, 403 F.3d 855 (7th Cir. 2005); *Brookins v. Kolb*, 990 F.2d 308 (7th Cir. 1993). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

In this case, Plaintiff does not allege which Defendants allegedly retaliated against him by authorizing these transfers. Therefore, he has failed to state a claim upon which relief may be granted, and Count 8 is dismissed from this action with prejudice.

**COUNT 9**

Plaintiff's final claim is that Defendants Middendorf, Coverly, McAdory, Cravens, Walker, Hinsley, and Randolph County have policies and practices that thwart the grievance process, thus impeding an inmate's access to the courts.

In the first instance, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d

644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Furthermore, an inmate "must exhaust only those administrative remedies that are available to him." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). When prison officials fail to respond to inmate grievances, those remedies effectively become "unavailable." *Id*. Thus, Plaintiff's access to the courts is not impeded when prison officials lose, overlook, or ignore his grievances.

Accordingly, Plaintiff has failed to state a claim upon which relief may be granted, and Count 9 is dismissed from this action with prejudice.

**OTHER DEFENDANTS**

Plaintiff lists three John Doe defendants in this action, alleging that one or more of them was responsible for his cell assignments and/or his prolonged stay in segregation. As stated above in Count 5, Plaintiff has no protected liberty interest in remaining in general population, or in being assigned to any particular cell or to any particular institution. Therefore, these Unknown Defendants are dismissed from this action with prejudice.

Plaintiff also makes reference to Defendant Waller, who apparently denied Plaintiff's request for protective custody in May 2004. Plaintiff makes no allegations to suggest that he had need of protective custody at that time, nor does he allege that Waller was aware of any particular threat to Plaintiff's safety that would require protection. Therefore, he has failed to state a claim against Waller, who is also dismissed from this action with prejudice.

**DISPOSITION**

**IT IS HEREBY ORDERED** that **COUNT 5, COUNT 6, COUNT 7, COUNT 8** and **COUNT 9** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Defendants **CASSIUS, COVERLY, CRAVENS,**

**DOES 1-3, FLATT, GRATHLER, GREENLEY, HINSLEY, HOOD, MCADORY, MIDDENDORF, RANDOLPH COUNTY, SCOTT, WALKER, WALLER** and **WILSON** are **DISMISSED** from this action with prejudice, as there are no claims pending against them.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **GRUBMAN, NIEPERT, PELKER, ROBERTSON, VAL, VEATH** and **WILLIAMS**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **GRUBMAN, NIEPERT, PELKER, ROBERTSON, VAL, VEATH** and **WILLIAMS** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate

Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED: August 2, 2007.**

                                            **s/ WILLIAM D. STIEHL**
                                                **DISTRICT JUDGE**